UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CHARLES R. HULLINGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 3:07cv160 |
| ) | |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §416(I); 42 U.S.C. §423; 42 U.S.C. §§ 1382, 1382c(a)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

    Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

    In the present matter, after consideration of the entire record, the Administrative Law

Judge ("ALJ") made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2001 (Ex. 1D).

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3. The claimant has severe impairments (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant is not entirely reliable.

6. The claimant has a limited residual functional capacity.

7. The claimant is unable to perform any past relevant work other than his job as a sales clerk as it is usually performed in the national economy (20 CFR 404.1565 and 416.965).

8. The claimant was born on November 15, 1956 and was 44 years old on the alleged disability onset date, which is defined as closely approaching advanced age (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not material to the determination of disability due to the claimant's age (20 CFR 404.1568 and 416.968).

11. Even if the claimant could not perform any past relevant work, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560 (c), 404.1566, 416.960(c), and 416.966).

12. The claimant has not been under a "disability," ad defined in the Social Security Act, from June 1, 2001 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-23).

Based upon these findings, the ALJ determined that the plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review.  This appeal followed.

The plaintiff filed his opening brief on August 20, 2007.  On October 4, 2007, the defendant filed a memorandum in support of the Commissioner's decision, and on October 15, 2007, the plaintiff filed his reply.  Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled.  See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).  From the nature of the ALJ's decision to deny benefits, it is clear that step four was the determinative inquiry.

The plaintiff filed his DIB and SSI applications on February 28, 2003, and January 30, 2003, respectively,  alleging disability as of June 1, 2001.

Plaintiff, born in 1956, was forty-nine years old on the date the ALJ issued his decision (Tr. 24, 30). Plaintiff had a high school education and previously worked as a cemetery worker, landscape laborer, and sales clerk (Tr. 36, 40, 76). Plaintiff alleged he was unable to work due to emphysema, a bad back, diverticulitis, and bad headaches (Tr. 35, 56). He reported that he was limited in lifting anything very heavy (Tr. 35). Plaintiff became very short of breath doing anything and cold air made it harder for him to breathe (Tr. 35). Plaintiff claimed he had back pain and chest pain (Tr. 35).

Plaintiff was hospitalized with a three-day history of shortness of breath in September 2000, over six months prior to his alleged onset of disability (Tr. 92-115, 185-194A). His discharge diagnoses were status asthmaticus, chronic obstructive pulmonary disease (COPD) with subsequent respiratory failure, status post mechanical ventilation, chronic illness of polyneuropathy versus prolonged muscular neuro-blockage; and decreased mobility and activities
of daily living secondary to neurological deficits (Tr. 95).

In December 2000, Dr. Koscielski reported that pulmonary function studies revealed that Plaintiff had mild to moderate obstructive lung disease mostly seen in the small airways with a mild response to bronchodilator; he requested clinical correlation (Tr. 84-88).

Plaintiff was involved in a motor vehicle accident in February 2002 (Tr. 116-23, 131). Several diagnostic tests were performed (Tr. 116-23), including a toxicology screen for alcohol (Tr. 122).

Dr. Cardenas treated Plaintiff for a variety of ailments, including COPD, stomach problems, cold and cough, skin rash, follow-up from motor vehicle accident, a lip sore, and

5

bronchitis (Tr. 128-37, 220-21).

Dr. Holton performed a consultative evaluation of Plaintiff in April 2003 (Tr. 150-57). Musculoskeletal examination showed a normal gait and station without assistive measures needed (Tr. 151). Plaintiff had no perceived difficulty in walking on heels, toes, and tandem walking except for moderate bilateral lower extremity stiffness and associated slowing (Tr. 151). There was palpable tenderness of the lumbar paravertebrals (Tr. 151). Neurological examination demonstrated normal muscular strength and tone with a rating of five out of five in all four extremities (Tr. 151). There was no evidence of atrophy or muscle spasm (Tr. 151). Deep tendon reflexes were normal throughout all four extremities and given a grade of zero (Tr. 151). There were no gross sensory deficits identified and fine finger manipulative abilities appeared normal (Tr. 151). Straight leg raising was negative bilaterally (Tr. 151). Grip strength measured by dynamometer at sixty pounds on the right and seventy pounds on the left (Tr. 151). Dr. Holton diagnosed COPD, chronic low back pain, and recurrent abdominal pain attributed to diverticulosis and gastroesophageal reflux (Tr. 152).

Dr. Landwehr, a state agency physician, reviewed the record evidence in May 2003 and concluded Plaintiff could perform light exertional work with only occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and also needed to avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 160-67). Dr. Whitley, also a state agency physician, reviewed the record evidence in August 2003 and affirmed Dr. Landwehr's assessment (Tr. 167).

Dr. Shipley, a state agency psychologist, reviewed the record evidence in June 2003 and concluded Plaintiff did not have a medically determinable mental impairment (Tr. 171-84). Dr.

Kladder, also a state agency psychologist, reviewed the record evidence in August 2003 and affirmed Dr. Shipley's opinion (Tr. 171).

May 2004 pulmonary function studies indicated a moderately severe obstructive ventilatory defect with air trapping and hyperinflation (Tr. 195-202). Plaintiff was diagnosed with COPD (Tr. 195).

In June 2005, Plaintiff saw Dr. Koscielski (Tr. 270-71). Plaintiff's diagnosis history was noted to be COPD (Tr. 270). Plaintiff had no musculoskeletal or psychological symptoms (Tr. 264). Plaintiff had localized swelling of the leg, but his gait and station were normal (Tr. 271). On the same day, Dr. Koscielski completed a "Physician's Opinion of Patient's Physical Limitations" form and indicated Plaintiff could lift up to twenty pounds occasionally and frequently, sit for two hours in an eight-hour day, stand for one hour in an eight-hour day, but could not walk at all (Tr. 236-37A). He opined Plaintiff was not physically capable of working (Tr. 237).

Plaintiff presented to Madison Center & Hospital for mental health counseling in June 2005 (Tr. 245, 256-62). He reported that his lawyer wanted him to have therapy and signed an information release if his lawyer should request information regarding therapy for Plaintiff's SSI application (Tr. 252). David Williams, MSW (Master of Social Welfare or Social Work), met with Plaintiff on several occasions (Tr. 238-45, 252-62). Plaintiff also participated in group therapy (Tr. 239, 243). Mr. Williams assessed a Global Assessment of Functioning (GAF) score of 65 (Tr. 253), indicating some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well and having some meaningful

7

personal relationships. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR), 34 (2000).

A July 2005 chest x-ray revealed mild obstructive pulmonary disease; there was no evidence for acute cardiopulmonary disease (Tr. 268). A July 2005 pulmonary function study showed severe obstructive airways dysfunction with bronchodilator response consistent with Plaintiff's diagnosis of asthma (Tr. 269).

In September 2005, Plaintiff saw Dr. Koscielski for follow-up of his COPD (Tr. 264-65). Plaintiff's diagnosis history was noted to be for essential hypertension and COPD; there were no other problems (Tr. 264). Plaintiff had no neurological or psychological symptoms (Tr. 264). Plaintiff had localized swelling of one leg only, but his gait and station were normal (Tr. 265). Dr. Koscielski noted that pulmonary function tests showed mild COPD changes (Tr. 265).

At the administrative hearing, the ALJ posed a series of hypothetical questions to Dr. Fisher, the vocational expert, including one describing someone of Plaintiff's age, education, and work experience, who could lift and carry twenty pounds occasionally and ten pounds frequently,
but who could not sustain exposure to dust, smoke, chemical fumes, or extreme temperatures and humidity, and could also not sustain work that imposed a closely regimented pace of production (Tr. 297-99). Dr. Fisher testified that the hypothetical individual could perform the job of sales clerk as it was performed in the national economy, as well as the jobs of surveillance system monitor, order clerk, charge account clerk, document preparer of microfilm, taper print circuit layout, and touch-up inspector of printed circuit boards, which numbered 1,300 jobs in the economy (Tr. 297-99).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The agency has promulgated regulations that set forth a five-step sequential process for analyzing disability claims. 20 C.F.R. §§ 404.1520, 416.920. A claimant has the joint burdens of production and persuasion through at least step four, where the individual's residual functional capacity (RFC) is determined. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); 20 C.F.R. §§ 404.1545, 416.945. At step five the Commissioner bears the burden of proving that there are jobs in the national economy that the plaintiff can perform. Herron v. Shalala, 19 F.3d 329, 333 n.18 (7th Cir. 1994). In the present case, the ALJ found that the plaintiff retained the ability to perform his past relevant work.

The agency's final decision is subject to review pursuant to 42 U.S.C. § 405(g), which provides that the agency findings "as to any fact, if supported by substantial evidence, shall be conclusive." "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Furthermore, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or on the [Commissioner's] designate, the ALJ)." Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)(citations omitted). This court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).

In his decision, the ALJ found that the plaintiff had not engaged in substantial gainful activity since his alleged onset date.  At step two, the ALJ determined that the plaintiff had severe impairments, but found, at step three, that he did not have an impairment or combination of impairments that met or equaled any impairment in the Listing of Impairments.  At step four, the ALJ determined that the plaintiff retained the residual functional capacity to perform his past relevant work as a sales clerk.   The ALJ also determined that the plaintiff's testimony was not entirely reliable.

The plaintiff first argues that the ALJ erred regarding postural limitations.  The ALJ stated "there is no reason to include postural limitations in the claimant's RFC" (Tr. 22).  The ALJ's reasoning was that "claimant did not testify to having back pain and there is no objective evidence of any back impairment in the medical evidence."  Hullinger claims that he testified about his lower back pain and the level of pain he endures, and that the record also contains at least one radiology report providing objective evidence for his testimony.  However, as the Commissioner points out, the x-rays Hullinger are relying on are cervical (neck) x-rays taken after Hullinger was involved in a motor vehicle accident.  Clearly, these neck x-rays are not relevant to his complaints of back pain.  Moreover, Hullinger testified that he had lower back pain every day for the past thirty-five years, yet apparently did not seek treatment for it, did not take prescription medication for it, and also worked for thirty-one years with the pain.  This court agrees with the Commissioner that considering the lack of persuasive evidence, the ALJ reasonably declined to find that Hullinger experienced a back impairment that resulted in physical limitations not already accommodated by a restriction to a range of light work.

Hullinger next claims that the ALJ improperly found him "not entirely reliable".

10

However, it is clear that the ALJ properly assessed Hullinger's credibility and reliability.  In this case, Dr. Koscielski's contemporaneous treatment notes and Dr. Holton's consultative examination report contain minimal objective findings.  The ALJ discussed Hullinger's daily activities, and in light of these activities, the ALJ could reasonably conclude that Hullinger's daily activities detracted from his complaints of disabling pain and limitations.  The ALJ also considered Hullinger's burglary conviction which was evidence which Hullinger voluntarily submitted into the record.  Although Hullinger believes that a conviction which occurred sixteen years in the past is not relevant, Mr. Williams, his social worker, felt that it was relevant enough to document it as Hullinger's legal history.  (Tr. 261).  The ALJ also considered Hullinger's work history.  Given Hullinger's earnings records (Tr. 30-31), the ALJ reasonably concluded that Hullinger had a spotty work record.  In fact, Hullinger admits that he might have had as many as fifty-five jobs. (Pl. Brief at 7-8).  Hullinger attempts to explain his work history deficiencies as resulting from his drinking (Tr. 295), but fails to establish that this does not reflect unfavorably on his credibility.

This court finds that the ALJ appropriately evaluated Hullinger's credibility and reasonably concluded Hullinger's subjective allegations of disabling limitations were not fully credible.  The Seventh Circuit has long recognized that an ALJ's credibility findings are entitled to considerable deference.  <u>Hayes v. Heckler</u>, 797 F.2d 508, 512 (7th Cir. 1986).

Hullinger also argues that the ALJ's decision violated Social Security Ruling 96-5p.  SSR 96-5p states:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case

11

>record, the adjudicator must make "every reasonable effort" to
>recontact the source for clarification of the reasons for the opinion.

Hullinger claims that the ALJ improperly disregarded an opinion of his treating doctor, Dr. Koscielski.  Dr. Koscielski opined that Hullinger could sit only two hours out of an eight hour day as well as stand and/or walk about one hour out of an eight hour day.  (Tr. 21, 236).  Dr. Koscielski also opined that Hullinger is unable to work, and has been disabled since at least January, 2005.  (Tr. 237).

The record shows that the ALJ properly considered Dr. Koscielski's opinion regarding Hullinger's limitations.  (Tr. 21).  However, as the Commissioner notes, the ALJ was not required to accept Dr. Koscielski's conclusory opinion that Hullinger was physically unable to work because it was not supported by objective medical findings and was also inconsistent with other record evidence.  20 C.F.R. §§ 404.1527(d)(3), (4), 416.927(d)(3), (4); SSR 96-2p.  The opinion that an individual is disabled or unable to work is expressly reserved to the Commissioner and a physician's opinion in this regard is not entitled to any special significance.  20 C.F.R. § 404.1527(e)(1), 416.927(e)(1).

Moreover, in the present case, Dr. Koscielski's opinion was not entitled to controlling weight, or even significant weight, because it was not supported by objective medical findings.  20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).  On the disability form, Dr. Koscielski provided a checkmarked "yes" when asked if his opinion was based upon his clinical examinations, diagnostic testing, and records and reports of any other medical providers that were of the type he would customarily rely upon in formulating opinions.  However, Dr. Koscielski completely fails to provide any elaboration regarding what he relied upon in reaching his opinion.  The form contained the question "Is there anything else you would care to add in support of, or in

12

comment upon, this patient's claim for disability benefits" and Dr. Koscielski did not provide any response. (Tr. 237A). In fact, in his brief filed with this court, Hullinger does not identify any objective evidence that supported Dr. Koscielski's opinion that he was unable to work, or had such significant physical limitations that he was unable to sit, stand and walk for eight hours a day. Thus, this court agrees with the Commissioner that the ALJ reasonably concluded that Dr. Koscielski's opinion was not entitled to controlling, or even significant, weight because it was not supported by objective medical findings. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); SSR 96-2p.

Hullinger also claims that the ALJ was required to recontact Dr. Koscielski for an explanation of his opinion. However, the ALJ reasonably considered and evaluated Dr. Koscielski's opinion and did not indicate that he could not ascertain the basis for his opinion, or that it was somehow inadequate or ambiguous. (Tr. 21-22). 20 C.F.R. §§ 404.1512(e), 416.912(e). Rather, the ALJ concluded that the physician's opinion of disability was not adequately supported by objective medical findings. Therefore, the ALJ was not required to recontact Dr. Koscielski.

Moreover, Dr. Koscielski's progress notes did not contain the types of objective findings that would support a finding of disability. For example, in June 2005, Hullinger saw Dr. Koscielski and he noted that Hullinger had no musculoskeletal or psychological symptoms (Tr. 264). Hullinger had localized swelling of the leg, but his gait and station were normal. (Tr. 271). Similarly, in September 2005, Dr. Koscielski observed that Hullinger had no neurological or psychological symptoms. (Tr. 264). Hullinger still had localized swelling of one leg only, but his gait and station were normal. (Tr. 265). Dr. Koscielski noted that pulmonary function tests

13

showed only mild COPD changes. (Tr. 265). Thus, it is clear that the ALJ could reasonably decline to grant controlling weight, or even significant weight, to Dr. Koscielski's opinion that Hullinger could not work and had very significant functional limitations because it was not well supported by objective medical findings. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); SSR 96-2p.

Dr. Koscielski's opinion also was not entitled to controlling weight because it was inconsistent with other record evidence, including other record physician opinions. Dr. Koscielski's opinion was inconsistent with his own treatment notes, which failed to show that Hullinger had disabling limitations. His opinion also was contradicted by the report of Hullinger's daily activities given by his mother, who testified that Hullinger did chores, took care of four dogs, and usually went to the grocery store with her and helped her with shopping. (Tr. 50, 52, 53, 54). Additionally, Hullinger's friends came to their house and visited several nights per week, Hullinger collected sports and firefighter memorabilia, watched television and worked huge jigsaw puzzles. (Tr. 51, 52, 53, 54). This testimony demonstrates that Hullinger could perform the range of light work as found by the ALJ.

Dr. Koscielski's opinion was also inconsistent with other record physician reports and assessments of Hullinger's abilities. Dr. Holton performed a consultative evaluation of Hullinger in April 2003, and reported that musculoskeletal examination showed a normal gait and station without assistive measures needed (Tr. 151). Hullinger had no perceived difficulty in walking on heels, toes, and tandem walking except for moderate bilateral lower extremity stiffness and associated slowing. (Tr. 151). There was palpable tenderness of the lumbar paravertebrals, but neurological examination demonstrated normal muscular strength and tone

14

with a rating of five out of five in all extremities. (Tr. 151). There was no evidence of atrophy or muscle spasm. (Tr. 151). Deep tendon reflexes were normal throughout all four extremities and given a grade of zero. (Tr. 151). There were no gross sensory deficits identified and fine finger manipulative abilities appeared normal. (Tr. 151). Straight leg raising was negative bilaterally. (Tr. 151). Grip strength measured by dynamometer at sixty pounds on the right and seventy pounds on the left. (Tr. 151). Since Dr. Holton's examination only revealed some moderate bilateral lower extremity stiffness and associated slowing and tenderness of the lumbar paraverterbrals and was otherwise normal, his report contradicts Dr. Koscielski's conclusory opinion of disability and supports the ALJ's RFC finding.

Additionally, Dr. Landwehr, a state agency physician, reviewed the record evidence in May 2003 and concluded that Hullinger could perform light exertional work with only occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and also needed to avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 160-67). Dr. Whitley, also a state agency physician, reviewed the record evidence in August 2003 and affirmed Dr. Landwehr's assessment. (Tr. 167). Although the ALJ did not ultimately adopt the state agency reviewing physicians' shared assessment to the extent they believed Hullinger experienced postural limitations, their opinions clearly contradict Dr. Koscielski's unsupported opinion that Hullinger was unable to work.

Hullinger next argues that the ALJ erred in not considering or giving weight to Hullinger's eligibility for Medicaid. However, as the Commissioner points out, there is no evidence in the record, other than Hullinger's subjective statements, that he was ever actually found entitled to Medcaid. The Commissioner further points out that it appears that Hullinger

15

was actually receiving assistance from the State of Indiana, as he reported having a "Hoosier health card" (Tr. 69).  Hullinger has not explained the eligibility requirements for a Hoosier health card and there is no indication that the State of Indiana's criteria are similar to the Social Security Act's disability requirements.  In any event, the ALJ was not bound by the determinations of other governmental units.  20 C.F.R. §§ 404.1504, 416.904.

Lastly, Hullinger argues that the ALJ erred because he found Hullinger "not disabled" during a period of time for which the ALJ had no evidence.  Clearly, Hullinger's argument is not well taken.  It was Hullinger's burden to show that he was disabled.  If Hullinger did not present evidence to the Social Security Administration, then he has no basis for claiming that the ALJ erred in finding him not disabled.  Bowen v. Yuckert, 482 U.S. 137 (1987).

This court finds that substantial evidence supports the ALJ's decision and the decision will be affirmed.

## Conclusion

Based on the foregoing, the decision of the ALJ is hereby AFFIRMED.


Entered: November 29, 2007.

                                         s/ William C.  Lee
                                         William C. Lee, Judge
                                         United States District Court